UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATISHA S. RICKS** | **CIVIL ACTION** |
| **VERSUS** | **CONSENT** |
| **COMMISSIONER OF SOCIAL SECURITY** | **NO. 18-1097-RLB**[1] |

## RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

Latisha S. Ricks ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-4), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** for further proceedings consistent with this Ruling.

## I.    PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits (Tr. 109-110) on July 30, 2015, alleging that she became disabled on November 28, 2012 because of a disabling condition, namely a tumor. (Tr. 132). Plaintiff's application was initially denied by an Administrative Law

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 8), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

Judge ("ALJ"), who first held an administrative hearing (Tr. 24-32) before issuing an unfavorable decision on December 8, 2017. (Tr. 7-22).[2] Plaintiff's request for review of the ALJ's decision (Tr. 105-108) was denied by the Appeals Council on October 19, 2018. (Tr. 1-4). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even

---

[2] The ALJ's decision states that "Kelly C. Roberts, an impartial vocational expert, also appeared and testified at the hearing." (Tr. 10). There is no mention of this testimony elsewhere in the decision and it is not part of the transcript of the hearing.

2

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are

medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.

2. Plaintiff engaged in substantial gainful activity during 2015 and 2016.

3. There had been no continuous 12-month period during which Plaintiff had not engaged in substantial gainful activity.

4. Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the Plaintiff did not have a severe impairment or combination of impairments.

5. Plaintiff was not under a disability, as defined in the Social Security Act, from November 28, 2012 through the date of the ALJ's decision.

## IV. DISCUSSION

Plaintiff advances the following five arguments in favor of reversal of the ALJ's decision: (1) the ALJ failed to have a qualified psychiatrist or psychologist review the record despite the presence of a mental impairment; (2) the ALJ failed to perform the psychiatric review

technique analysis mandated by the regulations; (3) the ALJ's step 1 finding is sloppy and incomprehensible while being contradicted by evidence the ALJ failed to address; (4) the ALJ's step 3 finding is defective because the ALJ never identifies the relevant medically determinable impairments, contrary to a *de minimis* standard applicable at step 2, and in violation of circuit law; and (5) the ALJ who conducted the hearing was not properly appointed under the Constitution. (R. Doc. 21 at 1-2). Because Plaintiff's fifth argument calls into question the ALJ's authority to issue a decision at all, the Court will begin its analysis there.

  A.  **ALJ's Authority to Issue a Decision**

Plaintiff suggests that the ALJ did not have the legal authority to preside over her claim for disability benefits because he was not properly appointed under the Appointments Clause of the United States Constitution. (R. Doc. 21 at 8-13). The Commissioner responds that, even if the ALJ was not constitutionally appointed under the Appointments Clause, Plaintiff waives that argument herein through a failure to raise the argument at or before the Appeals Council. (R. Doc. 23 at 12-20). No party disputes that the ALJ was not properly appointed at the time of the decision, and the Court takes judicial notice of SSR 19-1p, 2019 WL 1324866 (Mar. 15, 2019), issued by the Social Security Administration in light of the Supreme Court's decision in *Lucia*.

However, Plaintiff's reliance of the case of *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), and SSR 19-1p is misplaced. While no party disputes that ALJ's are inferior officers subject to the Appointments Clause of the United State Constitution, and that the ALJ presiding over Plaintiff's administrative hearing and issuing the decision herein was not properly appointed at the time of his decision, the analysis does not stop there. In *Lucia*, the Supreme Court held that the SEC's ALJs are officers of the United States subject to the Appointments Clause, and then relied on its prior decision in *Ryder v. United States*, 515 U.S. 177, 182-83 (1995) that "one who makes a

timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. The Court concluded that, since Lucia had made a timely challenge in objecting to the judge's appointment before the Commission and at the Court of Appeals, he was entitled to a new administrative hearing before a different, properly appointed administrative judge. *Lucia*, 138 S.Ct. at 2055.

Plaintiff herein did not raise the issue of the ALJ's constitutional authority to adjudicate her claims at the administrative level, instead raising the issue for the first time before this Court. Therefore, the issue before the Court now is whether this constitutes a timely challenge rendering *Lucia* authoritative on the issue, or whether the issue is waived on the basis of a failure to raise a timely challenge. Though not binding, many other district courts have addressed the question of timeliness in the same context, finding a challenge to an ALJ's authority not raised at the administrative level to be waived as untimely, and the Court finds those cases and their reasoning to be persuasive. In *Perkins v. Berryhill*, 2019 WL 2997082, at *4 (N.D. Tex. June 21, 2019), for example, the claimant did not raise her Appointments Clause challenge at the administrative level, raising it for the first time before the court. Citing *Velasquez v. Berryhill*, 2018 WL 6920457 (E.D. La. Dec. 17, 2018), and the reasoning therein, the *Perkins* court concluded that the claimant "waived her challenge to the appointment of her ALJ because she failed to timely raise such issue during the administrative process." *Perkins*, 2019 WL 29970892 at *4.

Presumably alluding to the plaintiff in *Lucia*, Plaintiff herein also suggests that it "would be highly inequitable and unfair if "disability claimants who are often unrepresented [] forfeit such challenges by not raising them before the ALJ." (R. Doc. 21 at 11). Plaintiff does not provide any authority for this assertion. Additionally, the Court notes that Plaintiff was advised on numerous occasions of her right to retain counsel in this matter, by way of correspondence

and orally at the administrative hearing, and was provided information about organizations that provide representation. (Tr. 8, 26-27, 57, 61, 63, 66-70, 199-205). The evidence also shows that Plaintiff retained representation on December 10, 2016, and that representation was terminated on July 27, 2017. (Tr. 76-77, 102).

Accordingly, the Court finds that Plaintiff has waived her objection to the ALJ's authority to issue a decision under the Appointments Clause and will now turn to Plaintiff's substantive arguments.

### B. Review by Psychiatrist or Psychologist

Plaintiff's first substantive argument is that the ALJ failed to have a qualified psychiatrist or psychologist review the record despite evidence of a mental impairment, and that a "proper step 2 determination with respect to a mental impairment can only be made after the expert review mandated by law has occurred. (R. Doc. 21 at 3-4). In support of this contention, Plaintiff asserts that she was "repeatedly diagnosed with anxiety or anxiety attacks, and therefore, the SSA had an "absolute obligation to have a qualified psychiatrist or psychologist review the record." (R. Doc. 21 at 4). The Commissioner challenges Plaintiff's reliance on certain statutory, regulatory, and jurisprudential sources, and argues that even if anxiety should have been found to be a severe impairment, evidence of functional consequences is lacking. (R. Doc. 23 at 5-5).

The ALJ found that Plaintiff had no impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months, and "therefore, the claimant does not have a severe impairment or combination of impairments." (Tr. 13). In coming to that conclusion, the ALJ summarized the regulatory considerations he employed for his analysis, reviewed her testimony from the administrative hearing, and then discussed the medical record pertinent to his decision, including mention of

7

anxiety. (Tr. 14-17). The ALJ appears to have concluded that Plaintiff did not have a medically determinable mental impairment, as opposed to concluding that Plaintiff had a medically determinable mental impairment but finding it did not meet the severity requirements. This is for at least three reasons. First, the ALJ expressly concurred with the findings of the reviewing physician, Dr. Maria Pons, who reviewed all of Plaintiff's medical records and recommended a finding of no medical impairment. (Tr. 44). Second, the ALJ did not employ the special technique for evaluating severity of mental impairments at step two, rating the degree of functional limitation imposed by a mental impairment. *See* 20 C.F.R. § 404.1520a. Finally, the ALJ appropriately summarized the analytical process to be employed at step 2, including first determining whether there is a medically determinable impairment, and if so, determining that impairment could reasonably be expected to produce the claimant's symptoms by evaluating the intensity, persistence, and limiting effects of her symptoms. (Tr. 11-12).

Thus, the question is whether an ALJ is required to consult a psychiatrist or psychologist when determining whether a claimant has a medically determinable mental impairment at step 2. Plaintiff cites no authority that requires an ALJ to consult a psychiatrist or psychologist when determining whether a claimant has a medically determinable medical impairment. 42 U.S.C. § 421(h) applies only to the initial determination made by the Administration. *See* 42 U.S.C. § 421(h); *Cobb v. Berryhill*, 2017 WL 6492078, at *4-5 (N.D. Tex. Nov. 29, 2017), *report and recommendation adopted*, 2017 WL 6493237 (N.D. Tex. Dec. 15, 2017). Additionally, "[t]he state agency's decision not to obtain the opinion of a psychologist or psychiatrist at the initial determination stage does not constitute reversible error by the ALJ." *Martinez v. Comm'r of Soc. Sec.*, 2017 WL 738496, at *2 (S.D. Tex. Feb. 24, 2017).

Plaintiff is also incorrect in her assertion that SSR 96-6p, 1996 WL 374180 (July 2, 1996), requires a psychologist designated by the Commissioner "to assess whether a claimant's mental impairments are severe and whether they meet a listing." (R. Doc. 21 at 3). SSR 96-6p, as noted by the *Cobb* court, "deal[s] with the requirement of expert opinion evidence when an ALJ determines that an individual's impairment are not equivalent to any Listing," and Plaintiff herein does not raise an issue of medical equivalence. *Cobb*, 2017 WL 6492078 at *5.

In *Cobb*, the claimant argued that the ALJ erred by failing to have a psychologist or psychiatrist review the medical evidence, as required by the "special technique" for evaluating mental impairments, even though a State Agency physician reviewed her medical conditions. 2017 WL 6492078 at *3. The claimant raised the same statutory and regulatory arguments as did Plaintiff herein, and the Court finds the conclusions made therein persuasive, wherein the court stated, that the "ALJ has greater flexibility than prescribed in 42 U.S.C. § 421(h) and 20 C.F.R. § 404.1503(e) when assessing a claimant's mental condition and limitations that the individual that performs the initial determination and has a duty to consider all evidence of impairments in the record." *Cobb*, 2017 WL 6492078 at *5.[3]

Furthermore, substantial evidence supports the ALJ's conclusion that Plaintiff did not have a medically determinable mental impairment. A "mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. *See also* 20 C.F.R. § 404.1521 (guidelines for establishing existence of a medically determinable impairment). Plaintiff suggests that she "was repeatedly diagnosed with anxiety or anxiety attacks," but the Court is not so convinced. (R. Doc. 21 at 4 (citing Tr. 229, 236, 279, 289, 333, 350, 361, 418,

---

[3] The Court also notes that the current version of 20 C.F.R. § 404.1503, relied upon by Plaintiff, does not contain a subsection (e) that was addressed in *Cobb*.

9

419, 440, 447, 451, 453, 463, 465)). Some of Plaintiff's references are separate notes on records from the same date. (Tr. 229 and 236; 279 and 350; 418, 419, 463, and 465; 451 and 453). Some of Plaintiff's references are to records of Plaintiff's self-reported medical history, and appointments with providers for anxiety-related symptoms. (Tr. 279, 289, 333, 350, 361, 418, 419, 440, 447, 463, 465).

Of the various references to anxiety noted by Plaintiff, only two represent instances where Plaintiff sought treatment for certain symptoms and the provider recorded a suspicion of anxiety or anxiety attacks. The first is Plaintiff's July 31, 2014 visit with Dr. Ibekwe, wherein Plaintiff complained of anorexia and insomnia, and Dr. Ibekwe reported an impression of anxiety/depression and prescribed Tofranil. (Tr. 229, 236). The other occurs almost two years later, on two dates based upon follow up appointments for the same event, i.e. recent episodes of fainting spells. On January 7, 2016, Plaintiff had an appointment with Dr. Kraker regarding her fainting spells, wherein the provider ordered brain imaging for possible unspecified syncope, anxiety attack, or brain tumor. (Tr. 419). At a February 18, 2016 visit with Dr. Kraker for another follow up for the same fainting spells, Dr. Kraker recorded Plaintiff's report of "at least 7 years history of headaches and migrainous symptoms who [sic] symptoms became more pronounced with what sound like anxiety attacks as well after an assault in Aug 2016." (Tr. 453).

The only evidence of treatment for anxiety is the prescribed Tofranil in July of 2014. (Tr. 229, 236). There is no evidence in the record of Plaintiff seeking treatment with a psychiatrist or psychologist for a mental impairment, or complaining of anxiety-related symptoms or obtaining anxiety-related diagnoses with a primary care provider outside of the two references, two years apart, noted above. Furthermore, there is no evidence in either the objective medical records, or Plaintiff's testimony at the administrative hearing, of complaints or reports of any functional

limitations resulting from anxiety-related symptoms or symptoms related or attributed to a mental impairment. Thus, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not have a medically determinable mental impairment. Even if the Court were to find that substantial evidence does not support the ALJ's conclusion, such error would be harmless as there is insufficient evidence of mental impairment or resulting functional limitations in the record to substantiate the severity requirement or any resulting functional limitations that affect Plaintiff's ability to work. Accordingly, Plaintiff's objection to the ALJ's decision on this ground is without merit.

    C.    **ALJ's failure to Provide the PRT Analysis**

Plaintiff argues next that the ALJ committed error when he failed to assess her mental impairments pursuant to the special technique, citing 20 C.F.R. § 404.1520a. (R. Doc. 21 at 4-5). The ALJ responds that, although the ALJ did not utilize the special technique, remand is not required because the error was harmless. (R. Doc. 23 at 7-8).

The first step of the special technique referenced by Plaintiff is to determine whether the claimant has "a medically determinable mental impairment[]" based on the "pertinent symptoms, signs and laboratory findings." 20 C.F.R. § 404.1520a(b)(1). If a medically determinable impairment does exist, then the ALJ is required to make a finding as to the degree of the claimant's limitation "based on the extent to which the impairment interferes with her ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2).

It follows, therefore, that where an ALJ does not conclude there is a medically determinable mental impairment, the ALJ is not required to assess the severity through the utilization of the special technique. Here, the ALJ did not assess Plaintiff with a mental

impairment, and the Court concluded above that substantial evidence supports that conclusion. Accordingly, the Court finds no legal error in the ALJ's failure to utilize the special technique to evaluate the severity of any mental impairment.

Even were the Court to conclude that the ALJ committed error when he failed to utilize the special technique, that failure does not automatically require remand where such error is harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). "[P]rocedural perfection is not required unless it affects the substantial rights of a party." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). An error is harmless where there is "no realistic possibility" that the ALJ would have reached a different result. *January v. Astrue*, 400 Fed. App'x 929, 933 (5th Cir. 2010).

In rating the degree of functional limitation attributable to a mental impairment, the ALJ considers "such factors as the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [she is] able to function. 20 C.F.R. § 404.1520a(c)(2). The four broad functional areas the Administration has identified are the abilities to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself, based on a rating scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(3) and (4). The regulations also note that, if the Administration "rate[s] the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Turning to the evidence in the record, Plaintiff complained of anorexia and insomnia at a July 31, 2014, was assessed with anxiety/depression and prescribed Topfranil, and was reported to be alert and oriented, without abnormalities of mood or affect, cooperative, and recent and remote memory intact. (Tr. 229). Her respiratory signs and cardiac signs were all normal as well. (Tr. 229). In early 2016, Plaintiff had two follow up visits for episodes of fainting wherein Dr. Kraker mentioned the possibility of anxiety attacks, but again heart cardiovascular and respiratory systems were reported normal, and there is no evidence of complaints of symptoms of anxiety. (Tr. 417-419, 449-454). Outside of these two instances, there is no evidence in the record of compromised ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, or adapt or manage oneself above a mild level.

The ALJ also noted that Plaintiff engaged in substantial gainful activity in 2015 and 2016. (Tr. 12, 128). In her Adult Function Report dated September 21, 2016, Plaintiff did not list any ways in which her illnesses, injuries, or conditions limit her ability to work, and reported that she brushes her teeth, washes her face, fixes breakfast, cleans the house with breaks, but does not sit up for too long otherwise her dislocated disc will "start acting up." (Tr. 152-53). She also indicated that she has no problems with personal care. (Tr. 153). On a physical examination dated January 16, 2016, Plaintiff alleged only that a brain tumor, not anxiety or a mental impairment, significantly impairs her activities of daily living, and reported that she dresses, feeds, and bathes herself, goes grocery shopping, does her own finances and prepares her own meals, and spends her day cleaning, cooking, moving things around the house, and sitting around the house. (Tr. 430). Her cardiovascular and respiratory systems were normal, and she had no focal neurological deficits, was able to follow all commands, and had normal mood and affect. (Tr. 430, 432). In the functional assessment from that visit, Plaintiff was assessed with unlimited

13

ability to walk and stand with appropriate breaks, unlimited ability to sit and stands, unlimited lifting and carrying capacity, no limitations to reaching, feeling, handling, or fingering, no workplace environmental limitations, and occasional climbing, crawling, balancing, bending, stopping, kneeling and crouching subject to history of imbalance. (Tr. 432).

At the administrative hearing, Plaintiff testified that she stopped working due to severe pains in her head, problems with her leg and right arm, and different things going on with her body. (Tr. 28). She stated that she has started seeing a pulmonologist, cardiologist, hematologist, and neurologist, who are running tests, monitoring a blood clot in her lungs, and assessing a heart murmur. (Tr. 29). There is no indication in her testimony of treatment with a psychologist or psychiatrist, or a primary care provider for mental health. She testified that she was having problems with her balance and lifting, on her right side in particular, which she attributes to two dislocated discs in her neck. (Tr. 30-31). After this testimony, the ALJ asked Plaintiff whether there were other things she wanted to tell him about her situation, to which she responded, "No sir. That's it." (Tr. 31).

Based on the objective medical evidence, discussed in part above, the Court finds there is no reasonable possibility that, even had the ALJ concluded she had a medically determinable mental impairment and employed the special technique, she would have met her burden on the severity requirement or the subsequent residual functional capacity assessment. Accordingly, Plaintiff's objection on this point is without merit.

### D. ALJ's Step One Findings

Plaintiff argues next that the ALJ's findings at step 1, with regard to whether Plaintiff engaged in substantial gainful activity and for what time periods, are sloppy, incomprehensible, and contradicted by evidence the ALJ failed to address. (R. Doc. 21 at 5-7). In response, the

14

Commissioner asserts that, even if the ALJ committed legal error at step 1 of his analysis, that error has no relevance because the ALJ's step 2 finding of no medically determinable impairment precludes Plaintiff's claim regardless. (R. Doc. 23 at 8-10). In Reply, Plaintiff re-asserts her position that the ALJ's error at step 1 is significant because of his alleged error at step 2. (R. Doc. 25 at 2).

Plaintiff filed her application for disability benefits alleging that she became disabled on November 28, 2012 due to a brain tumor. (Tr. 132). The ALJ concluded at step 1 that Plaintiff engaged in substantial gainful activity during 2015 and 2016. (Tr. 12). The ALJ states that "the claimant worked at the SGA level in the succeeding years (2015 and 2015), earning $13.404 and 15,672, respectively. (Exhibit 7D)." (Tr. 12). While Plaintiff suggests that this statement makes it "impossible to even know what the ALJ's precise step 1 findings were because the decision is so inarticulate and confused," the Court is not so convinced. Rather, the ALJ's section heading makes it clear that he finds Plaintiff engaged in substantial gainful activity in 2015 and 2016, and the records cited by ALJ (Exhibit 7D) support that finding as stated by the ALJ, such that the reference "(2015 and 2015)" is dismissed as simply a typographical error. The summary earnings cited by the ALJ show that Plaintiff earned $13,404 in 2015 and $15,672.41 in 2016, which figures match those restated by the ALJ. (Tr. 12, 128).

Plaintiff confirmed these findings in her testimony at the administrative hearing. When asked when the last time she did work was, she responded "2014, '15, 2016 if I'm not mistaken, '15. Last year." (Tr. 28). The ALJ then sought to clarify her testimony, referencing the earnings record, and Plaintiff subsequently testified that the last time she worked was in August of 2016. (Tr. 28). Plaintiff also testified that she stopped working in 2012, but then started working again, and stopped again in 2016 due to health issues. (Tr. 28).

15

As Plaintiff notes, "[a]nalyzing SGA begins with analyzing a claimant's average monthly earnings, not by looking at entire year blocks." (R. Doc. 21 at 6). 20 C.F.R. 404.1574(b)((3)(i) states that "[i]f your average monthly earnings are equal to or less than the amount(s) determined under paragraph (b)(2) of this section for the year(s) in which you work, we will generally consider that the earnings from your work… will show that you have not engaged in substantial gainful activity." The monthly average of Plaintiff's $13,404 earnings in 2015 is $1,117, while the monthly average of Plaintiff's $15,672.41 earnings in 2016 is approximately $1,306. Plaintiff's average monthly income for those years is above the $1,090 and $1,130 for non-blind individuals.[4] Although Plaintiff alleges the ALJ erred by looking at entire year blocks, the result is the same based on the average monthly earnings. The Court finds no error in the ALJ's conclusion that Plaintiff engaged in substantial gainful activity in 2015 and 2016, and for the reasons outlined above, the ALJ's step 1 findings are not so incoherent as to render them invalid.

### E. ALJ's Step Two Analysis

Plaintiff's final assignment of error is that the ALJ's findings at step 2 were made without reference to the proper legal standards, without properly developing the record, and with reliance on an outdated consultative source opinion. (R. Doc. 21 at 7-8). The Commissioner responds primarily that, even if Plaintiff were correct on her step 2 arguments, substantial evidence supports the ALJ's finding that Plaintiff had not met the durational requirement. (R. Doc. 11-12).

To show that she is disabled, Plaintiff must demonstrate that she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The

---

[4] *See http://ssa.gov/oact.cola/sga.html* (last accessed November 8, 2019).

Regulations go on to state that "[u]nless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509.

The ALJ concluded that the "record from 2012-2014 does not establish any long-term, severe medically determinable impairments. The claimant then worked at the SGA level in 2015-2016 despite any impairments." (Tr. 17). He then acknowledged that Plaintiff's cervical degenerative disc disease, for which she had surgery, was verified, but dismisses it for purposes of a step 2 finding on the grounds that "the issue only arose (became significantly symptomatic) in about April of 2017, with objective findings in June of 2017, concluding that there was "no objective medical evidence of an impairment that imposes more than minimal functional limitations that has lasted or could be expected to last for 12 months." (Tr. 17). He then goes on to state, "[a]t least prior to her surgery in June of 2017, the claimant was by her own report capable of performing all activities, mental and physical." (Tr. 17).

The Court finds error with the ALJ's process with regard to the duration requirement as it concerns Plaintiff's cervical degenerative disc disease. The objective medical evidence reveals that Plaintiff reported to the OLOL emergency department on June 20, 2017, complaining of right-side neck and right side upper back pain, intermittent over the prior two months. (Tr. 478). MRI on that dated revelated multilevel degenerative changes of the cervical spine, most notable at C2-3 with right posterior paracentral disc protrusion which contacts the anterior thecal sac and spinal cord, causing moderate central canal stenosis." (Tr. 482). Dr. Corsten, a surgeon, discussed those findings with Plaintiff, and she then elected surgery for C2-3 fusion after discussing therapeutic alternatives. (Tr. 486).

17

The Court also notes that Plaintiff reported a change in her medical conditions as of February 16, 2016 in her Disability Report, wherein she stated that a "dislocated disc [was] causing my neck to stiffing up, painful at times, some days im[sic] doing fine and some days a lot of pain." (Tr. 181). In her September 21, 2016 Adult Function Report, Plaintiff indicated that she does not sit up for too long otherwise her dislocated disc will start acting up. (Tr. 153). At the administrative hearing on September 26, 2017, after the Disability Report and Adult Function Report, the ALJ questioned Plaintiff with regard to right-sided weakness, and Plaintiff indicated that she had recently undergone disc removal surgery. (Tr. 31). Following up on her surgery, the ALJ asked, "when does your doctor say you might feel better?" and Plaintiff responded, "He doesn't say." (Tr. 31).

The ALJ then issued his decision on December 13, 2017, less than 12 months after he alleges Plaintiff's degenerative disc disease arose or "became significantly symptomatic," on the basis of his finding that no impairment imposed more than a minimal functional limitation that could be expected to last for 12 months. (Tr. 17). It is not clear to the Court the basis of the ALJ's finding that Plaintiff's cervical degenerative disc disease could not "be expected to last for 12 months" and the record is insufficient to ascertain when, if ever, these impairments could be considered severe. Accordingly, the Court is unable to determine whether substantial evidence supports this finding. At the very least, based on the objective medical evidence and Plaintiff's testimony, Plaintiff began experiencing neck pain in April of 2017 (potentially as early as February of 2016), then had cervical fusion surgery in June of 2017, and testified in September of 2017 that she was still experiencing right-sided weakness and her doctor did not say when she might feel better. (Tr. 31, 478, 486). There is no evidence that symptoms attributable to her cervical degenerative disc disease were ameliorated at any point after September of 2017 that

might provide substantial evidence supporting the ALJ's finding with regard to the duration requirement. The reverse is also true: there is no evidence that symptoms attributable to her cervical degenerative disc disease continued past the September 2017 administrative hearing. Additionally, there is no finding with regard to any resulting functional limitations attributable to Plaintiff's degenerative disc disease, though Plaintiff testified that she can only lift "about five pounds" with her right side. (Tr. 30-31).

The ALJ appears to conclude that Plaintiff has a medically determinable physical impairment of cervical degenerative disc disease, which is supported by the objective medical records summarized above. (Tr. 17). The ALJ does not, however, address his findings with regard to whether her cervical degenerative disc disease constitutes a severe impairment, how it fails to meet the duration requirement in light of the evidence discussed above, and if so, what resulting functional limitations are present.

The Court also notes that the timing of Plaintiff's cervical degenerative disc disease and cervical fusion in relation to her alleged onset date or filing date, or the ALJ's decision, would not pose a bar to her recovery. The ALJ already properly noted that Plaintiff engaged in substantial gainful activity in 2015 and 2016, as discussed above. Further, an ALJ's decision may find disability from an onset date different from that alleged by a claimant, so long as that established onset date is within the insured period and supported by substantial evidence. *See, e.g., Wilkinson v. Astrue*, 2010 WL 2522352, at *7 (S.D. Tex. June 17, 2010) (finding substantial evidence supports ALJ's established onset date and denying summary judgment accordingly).

Accordingly, the Court finds it proper to remand for appropriate consideration of this issue. On remand, the ALJ must consider the step 2 severity requirement and duration requirements as it pertains to Plaintiff's degenerative disc disease. If the ALJ concludes that

Plaintiff's degenerative disc disease meets the step 2 requirements for a severe impairment, the ALJ must then proceed through the remainder of the five-step analytical process as appropriate, including if necessary, the taking of additional medical evidence, a supplemental administrative hearing, or a supplemental consultative evaluation. The Court does not purport to direct a particular outcome upon remand, but rather directs the ALJ to reconsider his findings with regard to Plaintiff's degenerative disc disease in accordance with the findings herein, properly develop the record to the extent necessary, and issue a new decision accordingly.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is **REVERSED,** and this matter is **REMANDED** for further proceedings consistent with this Ruling.

Signed in Baton Rouge, Louisiana, on January 29, 2020.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**